**In re Steve ROLLINS, Debtor.**

**Steve Rollins, Plaintiff,**

v.

**Diane Campbell, Ben Smith, and Frank Baker, Defendants.**

**Diane Campbell, Ben Smith, and Frank Baker, Appellants,**

v.

**Steve Rollins, Appellee.**

Nos. A93–67408–REB, 1:96–CV–2901–GET.
Adversary No. 93–6598.

United States District Court, N.D. Georgia, Atlanta Division.

April 2, 1997.

Dorothy Hemmer Bishop, Office of Cobb County Attorney, Law Department, Marietta, GA, William Lee Rothschild, Byrne, Moore & Davis, Atlanta, GA, for Appellants.

Hirsh Freidman, Atlanta, GA, for Appellee.

## ORDER

G. ERNEST TIDWELL, District Judge.

The above-styled matter is presently before the court on: the bankruptcy briefing schedule [docket no. 1]; appellants' motion to supplement the record [docket no. 6]; and appellee's motion for leave to file sur-reply brief [docket no. 13].

### Motion to supplement record

Appellants move to supplement the record on appeal. Specifically, appellants move to supplement the bankruptcy appellate record with two items that were filed in the above-styled main bankruptcy proceeding, namely: (1) an order, entered on August 24, 1995, denying the Trustee's motion to dismiss; and (2) an order, entered on December 27, 1995, dismissing appellee's Chapter 13 bankruptcy case. Appellants contend that while this information is not critical to their appeal, it does provide the court with helpful information relating to how appellee's bankruptcy case ultimately was resolved.

Appellee does not oppose appellants' motion to supplement the record. In addition, the orders, with which appellants wish to supplement the record, address undisputed matters. Accordingly, the court GRANTS appellants' motion to supplement the record [docket no. 6]. PROVIDED, however, that the court will consider these documents only for the limited purpose of establishing that Rollins' underlying Chapter 13 bankruptcy case has now been dismissed.

*Motion for leave to file sur-reply brief*

■ Appellee moves the court for leave to file a sur-reply brief. Appellee contends that he should be permitted to submit a sur-reply brief to point out to the court, and to rebut, the extraneous material that appellants raised in their reply brief. Appellee, however, admits in the first sentence of his sur-reply brief that when preparing appellants' reply brief, "the latest counsel for appellants has taken *the exact same materials presented in the lower court and presented in the appellants' initial brief* and restated same . . ." (emphasis added). Further, appellee has failed to point to any issue that appellants addressed in their reply brief that was not raised in appellants' initial brief or appellee's response. Indeed, in his proposed sur-reply brief, appellee merely expands and restates arguments he makes in his responsive brief. Under these circumstances, the court finds that appellee is not entitled to file a sur-reply brief.

Neither the federal rules of bankruptcy procedure nor the local rules of this court permit the filing of sur-reply briefs. *See* Bankruptcy Rule 8009(c); LR 220–1, NDGa. While this court may, under appropriate circumstances, consider additional argument and authority, appellee in this instance has failed to justify his request to file a sur-reply brief. Accordingly, appellee's motion for leave to file a sur-reply brief [docket no. 13] is DENIED.

■ In addition, after reviewing the docket, it appears that appellee has filed an "Amendment to Appellee's Reply Brief" [docket no. 14] in which appellee seeks to add two paragraphs of argument and citation of authority to his "reply brief." Appellee neither seeks this court's permission to amend his "reply brief" nor shows why this information was not, in the first instance, included in appellee's responsive materials. Therefore, this court, when reaching the merits of the bankruptcy appeal before it, will not consider any argument or citation of authority presented in appellee's "Amendment to Appellee's Reply Brief" [docket no. 14].

*Bankruptcy appeal*

### 1. Factual Background

Appellants appeal from the August 19, 1996 order, entered in the above-styled adversary proceeding, sanctioning appellants for willfully violating the automatic stay found at section 362(a) of the bankruptcy code. To understand the issues raised and the arguments presented by the parties to the instant appeal, it is helpful to examine the factual context within which the current appeal arises.

On July 13, 1990, appellee, Steve Rollins ("Rollins"), and his former wife, Bonnie, were divorced in accordance with a Final Judgment and Decree that was entered upon the docket of the Superior Court of Cobb County. The Final Judgment and Decree adopted and incorporated a consent agreement into which Rollins and Bonnie had previously entered settling the issues raised in their divorce. According to the terms of that consent agreement, Rollins was required to pay the sum of $312, per month, in support of his minor child, Joshua. Rollins was required to make this support payment directly to the Cobb County Child Support Receiver.

On that same day, based upon information Bonnie provided in an affidavit, the Magistrate Court of Cobb County issued a criminal warrant against Rollins (Warrant No. 90W8928). That warrant charged that Steve Rollins, in violation of O.C.G.A. § 19–10–1 (Georgia's child abandonment

statute), had, for a period in excess of thirty days, failed and refused to support his son Joshua. Joshua Rollins was two years old at the time.

Rollins was arrested the next day. Thereafter, then acting Cobb County Solicitor, Patrick Head, formally accused Rollins of committing the criminal offense of willful, voluntary abandonment of a minor child and commenced a criminal action in the State Court of Cobb County. *State v. Steve Rollins*, Case No. 90M 5028.

Rollins waived formal arraignment on October 4, 1990. Rollins' trial date was initially set for October 22, 1990. On January 7, 1991, after several delays, Rollins appeared before Judge Mary Staley, on his own behalf, and entered a plea of *nolo contendre* to the state's charges of willful abandonment. After accepting Rollins' *nolo contendre* plea in open court, Judge Staley sentence Rollins to twelve months in prison. But Judge Staley suspended Rollins' twelve month sentence upon condition that Rollins: pay a $240 fine (plus a $10 per month probation supervisory fee during the two months during which Rollins paid his fine); and comply fully with the terms of the terms of the July 13, 1990 divorce Final Judgment and Decree. Judge Staley also ordered plaintiff Rollins: not to violate the criminal laws of any governmental unit; to avoid injurious and vicious habits (especially alcoholic intoxication, narcotics, and other dangerous drugs not medically prescribed); to avoid persons or places of disreputable or harmful character; to report to his probation supervisor and to permit the supervisor to visit him at his home or elsewhere; to work faithfully at his employment; not to change where he lived, move, or leave the state without prior permission; and to support his dependents to the best of his ability.

At the time Rollins received his sentence, the task of monitoring and supervising Georgia suspended and probated sentences was performed by the Georgia Department of Corrections. In July of 1992, however, in response to changes made to the supervisory authority of the Department of Corrections, the judges of the State Court of Cobb County transferred the responsibility for monitoring and supervising Cobb County misdemeanor sentences, including suspended sentences in child abandonment cases, from the Department of Corrections to a newly created Sentence Enforcement Unit ("SEU"). Appellants Baker and Campbell are SEU employees. Appellant Smith is the Cobb County Solicitor.

After the SEU assumed responsibility for monitoring compliance with misdemeanor sentences, Rollins, as he had done before, fell behind on the payments that he was required to make under the terms of his suspended sentence. On April 5, 1993, defendant Campbell, acting in her capacity as an agent of the Cobb County SEU, drafted a petition for revocation of Rollins' suspended sentence. In that document, Campbell indicated that as of March 29, 1993, Rollins had accrued an arrearage on his child support obligations in the amount of $2,843. Campbell scheduled a revocation hearing for May 10, 1993. When Rollins did not attend the May 10th revocation hearing, Judge Clayton, based upon an affidavit Campbell provided to the court showing that Rollins was in arrears for child support in the amount of $3,155 ($2,843 plus one additional month's child support of $312), ordered Rollins' arrest.

On May 13, 1993, when Rollins became aware of the outstanding warrant for his arrest, he appeared in Campbell's office to discuss the matter. Campbell consulted with the SEU's director, appellant Baker, and together they made the decisions to recall Rollins' arrest warrant and to require Rollins to appear at another revocation hearing. Campbell scheduled the new revocation hearing for May 24, 1993.

On May 20, 1993, shortly before the May 24th revocation hearing was held, Rollins filed a petition under Chapter 13 of the Bankruptcy Code. In his petition, Rollins

listed the Cobb County Child Support Recovery unit as a creditor with a child support arrearage of $3,000. Rollins testified that he informed Campbell and Baker that he had filed for bankruptcy, but that Baker, when informed, had responded that he did not care. Rollins testified that Baker stated that Rollins was going to jail if he did not pay what he owed. Baker, however, did consult with Smith about the effect that Rollins' bankruptcy petition had on the state court revocation proceedings.

During the revocation hearing held in Cobb County State Court on May 24th, Rollins informed Judge Melody Clayton that he was being represented by the law firm of Hirsch Friedman and Associates in both Rollins' bankruptcy matter and in the state court revocation matter. Based upon that statement, and because no member of the Hirsch Friedman firm had appeared before her on Rollins' behalf, Judge Clayton suspended the revocation hearing until the following day—May 25, 1993.

At the May 25th revocation hearing, Judge Clayton ruled from the bench that in light of Rollins' bankruptcy petition— and the uncertainty surrounding whether the bankruptcy petition had stayed the state court revocation proceedings—the petition to revoke Rollins' suspended sentence that was pending before her would be removed from her calendar until the Solicitor's office conducted further research and presented her with additional argument on whether the proceedings could properly go forward in state court.

Rollins' Chapter 13 repayment plan provided that Rollins would submit all of his future earnings or income to the control of the bankruptcy court and the Chapter 13 Trustee. The plan provided that Rollins would make direct payments to satisfy his current child support obligations. The plan also made arrangements for the payment of all of Rollins' pre-petition child support arrearage. The bankruptcy court confirmed Rollins' Chapter 13 repayment plan on July 20, 1993.

The following month, rather than approaching Judge Clayton and asking her to lift the stay of the revocation proceedings that she previously had imposed, appellant Smith caused defendant Campbell to prepare another petition for revocation of Rollins' suspended sentence. That revocation petition was filed on August 3, 1993. The petition alleged that from January 7, 1991, through May 20, 1993, Rollins failed to comply with his support obligations by failing to pay $312 each month for the support of his minor child. The petition also alleged that Rollins: failed to pay his $240 fine within sixty days from the date of his sentence; failed to keep his probation supervisor informed of his current address and had moved without the supervisor's permission; abandoned his minor child Joshua by failing to pay child support from May 13, 1993 to June 22, 1993; and failed to comply with the conditions of his suspended sentence by accruing an arrearage in his child support payments after filing bankruptcy. A hearing on this petition for revocation was set for August 23, 1993.

On the morning of August 23, 1993, Rollins filed the above-styled adversary proceeding against appellant Campbell in the bankruptcy court. In the adversary complaint, Rollins alleged that Campbell, by proceeding with revocation proceedings against Rollins in the Cobb County State Court, was violating the bankruptcy automatic stay found at 11 U.S.C. § 362(a). The bankruptcy court later permitted Rollins to amend his bankruptcy adversary complaint to allege similar claims against appellants Smith and Baker.

During the afternoon of August 23, 1993, the issue of whether Rollins' suspended sentence should be revoked was again presented to Judge Clayton. Before addressing any of the issues raised in the revocation proceeding, Judge Clayton asked appellant Smith why the August petition for revocation had been filed before the issue of whether she had authority to hear the May revocation petition had been resolved. Appellant Smith did not answer

Judge Clayton's question directly. Instead, Smith responded that because Rollins had filed an adversary complaint against appellant Campbell, the bankruptcy court would be a better forum within which to determine whether the state court revocation proceedings were stayed by Rollins' bankruptcy action. Based upon these representations, Judge Clayton again removed Rollins' revocation proceedings from her calendar. Neither revocation proceeding caused Rollins to be incarcerated and Rollins' original sentence was not modified.

### 2. Proceedings Below

The parties thereafter proceeded to trial before the bankruptcy court on the issue of whether appellants' attempts to revoke Rollins' suspended sentence, after they were informed that Rollins had filed a bankruptcy petition, violated the automatic stay found at section 362(a) of the bankruptcy code. In addition, the bankruptcy court entertained argument and received evidence on the issue of whether, assuming that appellants violated the automatic stay, Rollins was entitled to an award of damages—including costs, attorneys' fees and punitive damages—under 11 U.S.C. § 362(h).

Appellants argued that because they were simply attempting to enforce the terms of the criminal sentence that Rollins' received in 1991, their actions were part of a continuing criminal action against Rollins. Thus, appellants contended, their actions were expressly excepted from the automatic stay provisions by 11 U.S.C. § 362(b)(1). Appellants further argued that because they did not violate the automatic stay, the bankruptcy court could not properly sanction them for willfully violating that stay.

Rollins, on the other hand, argued that although appellants' actions were taken under the guise of continuing a criminal proceeding, what the appellants were actually doing was using the threat of incarceration as a club to coerce Rollins' compli-

ance with his civil support obligations. Therefore, Rollins argued, because the true character of appellants' actions resembled the collection of a civil debt rather than the enforcement of a criminal penalty, appellants' actions did not fall within the "continuation of a criminal action or proceeding" exception of 11 U.S.C. § 362(b)(1). Rollins also claimed that, under 11 U.S.C. § 362(h), he was entitled to recover damages caused by appellants' willful violation of the automatic stay.

On February 1, 1995, after considering the argument and evidence presented to it, the bankruptcy court delivered an oral ruling in open court finding and concluding that appellants had violated the automatic stay and that Rollins was entitled to an award of actual damages, including attorneys' fees. The bankruptcy court later reduced its oral ruling to written form in an order dated August 19, 1996. Reaching its decision, the bankruptcy court found that to properly resolve whether appellants actions were part of a continuing criminal action it needed to inquire into the actual character of appellants' conduct. After conducting an exhaustive analysis of Georgia law, it concluded that appellants' enforcement of the terms of Rollins' suspended sentence was closely analogous to a civil contempt proceeding. Specifically, the bankruptcy court found that the purpose of appellants' actions was not to enforce Rollins' sentence of incarceration, but to enforce compliance with the non-punitive condition of support payment. Therefore, the bankruptcy court held, because the revocation proceedings appellants brought against Rollins were not criminal in character, the filing of the August 3, 1993 revocation proceeding violated the bankruptcy automatic stay.

In its order, the bankruptcy court also held that appellants had willfully violated the automatic stay and determined the precise amount of damages and attorneys' fees to which Rollins was entitled under 11 U.S.C. § 362(h). Appellants appeal the

rulings set forth in the bankruptcy court's August 19, 1996 order.

### 3. Issues Presented and Standard of Review

As framed by the appellants, the instant appeal presents the following two issues for resolution:

(1) Did the bankruptcy court err when it held that the appellants violated 11 U.S.C. § 362(a) when appellants petitioned the revocation of the suspended sentence that was imposed upon Rollins for the criminal offense of abandonment in the matter of *Georgia v. Rollins*, Case No. 90 M 5028?

(2) Did the bankruptcy court err when it awarded damages against the appellants under 11 U.S.C. § 362(a) for willfully violating the automatic stay?

■ When deciding these issues, this court must be mindful that "[when] reviewing bankruptcy court judgments, a district court functions as an appellate court. It reviews the bankruptcy court's legal conclusions *de novo* ... but must accept the bankruptcy court's factual findings unless they are clearly erroneous." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993) (citations omitted).

### 4. Discussion

Appellants argue that the bankruptcy court erred as a matter of law when it ignored the plain language of 11 U.S.C. § 362(b)(1) and instead embarked upon an exhaustive inquiry into the nature of, and purposes served by, appellants' enforcement of Rollins' suspended sentence. Specifically, appellants contend that because the language Congress used in § 362(b)(1) does not expressly limit the definition of "continuation of a criminal action or proceeding," the plain meaning of that section excepts from the automatic stay the continuation of "all criminal proceedings whatsoever." Therefore, appellants argue, the bankruptcy court exceeded its authority

and applied an improper legal standard when it examined the true character of the revocation proceedings that appellants brought against Rollins and found that those proceedings violated the automatic stay.

Rollins responds that the bankruptcy court, after receiving evidence and conducting a thorough inquiry into the nature of appellants' enforcement proceedings, properly made a factual determination that appellants' actions were not part of a continuing criminal action. Rollins argues that appellants have not shown that the bankruptcy court's determination was clearly erroneous. Therefore, Rollins argues, the bankruptcy court's finding that the appellants' actions were not excepted from the automatic stay is both factually correct and properly reached.

The automatic stay provisions of the Bankruptcy Code are quite broad. *Carver v. Carver*, 954 F.2d 1573, 1576 (11th Cir. 1992). Once a bankruptcy petition is filed, the automatic stay prohibits: (1) the "commencement or continuation ... of a judicial, administrative, or other proceeding;" (2) the "enforcement" of a judgment obtained prior to bankruptcy; or (3) any other "act" to obtain possession of property of the estate. 11 U.S.C. § 362(a). Further, "[u]nless [an] action comes under an exception in 11 U.S.C. § 362(b) or a party seeks relief from the stay under 11 U.S.C. § 362(d), the stay remains in effect until the case is disposed of by the court." *Carver*, 954 F.2d at 1576. Finally, any individual who is injured by a willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

The filing of a bankruptcy petition, however, does not stay "the commencement or continuation of a criminal action or proceeding against the debtor[.]" 11 U.S.C. § 362(b)(1). As noted in the bankruptcy code's legislative history, "bankruptcy laws

are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy." House Report No. 95–595, 95th Cong. 1st Sess. 342 (1977); Senate Report No. 95–989, 95th Cong. 2nd Sess. 51 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5837, 5963, 6298.

The critical issue that this court must address in the instant appeal is whether appellants' attempts to revoke Rollins' suspended sentence can fairly be described as the continuation of a criminal action or proceeding. Because the bankruptcy code does not expressly define what is, or is not, a "continuation of a criminal action," this court must rely upon principles of statutory interpretation to discern the meaning of that phrase.

 This circuit has recently noted that when construing terms found in the complex bankruptcy code, courts must first look to the plain meaning of the words used, and then determine whether applying the plain meaning is demonstrably at odds with Congress' intent. *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1550 (11th Cir.1996). Applying the first prong of this test, the court concludes that the plain meaning of the phrase "continuation of a criminal action" is broad enough to include the revocation proceedings that appellants brought against Rollins in this matter.

 Webster's Dictionary defines the word continuation as "continuance … in an activity" and "the causing of something to continue." *Webster's Third New International Dictionary* 493 (1986). Black's Law Dictionary defines "criminal action" as "an action, suit, or cause instituted to punish an infraction of the criminal laws." *Black's Law Dictionary* 336 (5th ed.1979). Using these everyday definitions, the "continuation of a criminal action" is the continuance of an action, suit, or cause that was instituted to punish an infraction of the criminal laws.

In this case, by bringing revocation petitions against Rollins, the appellants were attempting to enforce Rollins' continuing obligation to comply with the terms of his suspended sentence. Judge Staley imposed that sentence, and the conditions which it contained, upon Rollins after Rollins pled *nolo contendre* to the charge of willfully abandoning his minor son. The state of Georgia charged Rollins with abandonment in an action brought to enforce its criminal laws, namely *Georgia v. Rollins*, Case No. 90 M 5028. Further, because Georgia law permits the terms of a suspended sentence imposed in accordance with Georgia's child abandonment statute to be enforced until such time as the minor child reaches the age of majority or is otherwise emancipated, the criminal action styled *Georgia v. Rollins* remains pending against Rollins at this time. Under these circumstances, the court finds that appellants' attempts to revoke the sentence that Judge Staley imposed upon Rollins are part of the continuation of a criminal action.

 As noted above, the court must construe the phrase "continuation of a criminal action" by its plain meaning unless that construction presents "the rare case in which the literal application of the statute will produce a result demonstrably at odds with the intention of its drafters." *Jove*, 92 F.3d at 1551 (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). After reviewing the authority presented to it, the court finds that construing the language of § 362(b)(1) by its plain meaning to include the continuation of all criminal matters rather than limiting it, as the bankruptcy court did in this case, to exclude criminal cases the nature of which are analogous to civil contempt, does not produce a result demonstrably at odds with congressional intent.

Most of the courts which have construed § 362(b)(1) have concluded that the plain meaning of the term "criminal action" includes all criminal actions, regardless of

the motivation or purpose behind the criminal action. Although there is some authority that supports the view that the bankruptcy court adopted in this case— that when determining whether an act is the continuation of a criminal action, the court should inquire, in the first instance, into the nature of the criminal proceedings and the facts and circumstances behind the prosecution—the majority of courts deciding this issue have found such an inquiry inappropriate. *See Davis v. Sheldon (In re Davis)*, 18 B.R. 701 (D.Del.1982), *aff'd*, 691 F.2d 176 (3rd Cir.1982); *Taylor v. Widdowson (In re Taylor)*, 16 B.R. 323 (Bankr.D.Md.1981), *rev'd on other grounds*, 44 B.R. 548 (D.Md.1984). In fact, most of these courts have found that all criminal proceedings are excepted from the automatic stay under the plain meaning of § 362(b)(1) regardless of the nature of those proceedings or the motivations behind them. *See, generally, United States v. Caddell*, 830 F.2d 36 (5th Cir. 1987); *In re Invesco International Corporation*, 93 B.R. 296 (Bankr.N.D.Ga.1988); *United States v. Troxler Hosiery Co., Inc.*, 41 B.R. 457 (M.D.N.C.1984).

While the use of criminal process to collect civil debts may in some instances, as Rollins argues, frustrate the purpose of the automatic stay:

> the exemption of criminal proceedings from the automatic stay does not limit bankruptcy courts' jurisdiction to prevent them from enjoining such proceedings under section 105(a) [of the bankruptcy code]. Instead, the section 362(b)(1) exemption ... merely reflects Congressional judgment that debtors should move bankruptcy courts to action to determine on a case by case basis whether a particular action interferes with the debtor's financial rehabilitation or the orderly liquidation of his estate.

*Howard v. Allard*, 122 B.R. 696, 699 (W.D.Ky.1991) (internal citations omitted). Indeed, allowing criminal actions to continue until such time as the debtor moves for injunctive relief under § 105(a) of the bankruptcy code, instead of first attempting to discern the true nature of the criminal actions, "avoids unnecessary impediments to and intrusion upon criminal proceedings ... [and] permits criminal action to proceed unimpeded unless a party in interest makes an affirmative showing that circumstances warrant an injunction—a result consistent with Congressional policy that criminal proceedings not be automatically stayed." *Taylor*, 16 B.R. at 325.

In its order, the bankruptcy court conceded that the determination of whether Rollins was complying with the terms of his suspended sentence was a serious matter in the state criminal process. Nevertheless, the bankruptcy court found that the true nature of appellants' actions were civil rather than criminal. Therefore, the bankruptcy court held that appellants' actions did not fall within the exception found at § 362(b)(1). Without deciding whether the bankruptcy court's characterization of the revocation proceedings that appellants brought against Rollins is correct under Georgia law, the court finds, under the line of authority presented above, that the bankruptcy court erred when it ignored the plain meaning of § 362(b)(1) and engaged in such an inquiry. The court, therefore, finds that the bankruptcy court erred when it found that appellants' actions violated the automatic stay.

Finally, because the bankruptcy court awarded damages against appellants under § 362(h) for violating the automatic stay, and because this court finds that appellants' actions were excepted from that stay under the plain meaning of § 362(b)(1), the court further finds that the bankruptcy court's award of damages to Rollins cannot stand. Therefore, for the reasons described above, the opinion of the bankruptcy court is REVERSED.

### SUMMARY

Appellants' motion to supplement the record [docket no. 6] is GRANTED.

PROVIDED, however, that the court will consider these documents only for the limited purpose of establishing that Rollins' underlying Chapter 13 bankruptcy case has now been dismissed.

Appellee's motion for leave to file a sur-reply brief [docket no. 13] is DENIED.

The opinion of the bankruptcy court is REVERSED.